**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**SUZY ST. JOHN**
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GARY R. ROM**
Deputy Attorney General
Indianapolis, Indiana



FILED

Jan 31 2013, 9:18 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

EDMOND MILLER,                              )
                                           )
    Appellant-Defendant,                   )
                                           )
          vs.                          )      No. 49A02-1108-CR-721
                                           )
STATE OF INDIANA,                          )
                                           )
    Appellee-Plaintiff.                    )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable William J. Nelson, Judge
Cause No. 49F07-1006-CM-50998

**January 31, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Edmond Miller ("Miller") was convicted after a bench trial of disorderly conduct[1] as a Class B misdemeanor. He appeals, raising the following restated issue: whether sufficient evidence was presented to support his conviction because Miller's conduct constituted protected political speech under Article I, Section 9 of the Indiana Constitution.

We reverse.

## FACTS AND PROCEDURAL HISTORY

Around 7:00 p.m. on June 28, 2010, Miller was in his car heading home after stopping at a local restaurant, Bar-B-Q Heaven, in Indianapolis, Indiana. As he was driving on 30th Street, Miller noticed a patrol car driving behind him. Miller changed lanes to let the officer, Officer Phillip Bulfer with the Indianapolis Metropolitan Police Department ("Officer Bulfer"), pass him. Officer Bulfer did not pass Miller, but instead, changed lanes, and continued to drive behind Miller. Miller changed lanes a second time, and Officer Bulfer again followed him. Officer Bulfer then initiated a traffic stop on Miller near the intersection of 30th Street and White River Parkway East Drive for failing to signal continuously for 200 feet before changing lanes. There was a park about 100 to 150 feet to the south of the area where the traffic stop occurred, and there were children playing baseball at the park.

Officer Bulfer approached Miller's car and observed Miller quickly moving his hands back and forth between the center console, underneath the seat, and the glove box. Officer Bulfer feared that Miller could be retrieving a weapon, so he ordered Miller to

---

[1] *See* Ind. Code § 35-45-1-3.

exit the car and placed him in handcuffs. Miller was "very irate" and began yelling and swearing, asking Officer Bulfer "why [he] was doing this." *Tr*. at 6, 7. Miller kept interrupting the officer and was being very loud. Officer Bulfer asked Miller to stop yelling and pointed to the children, saying "you're . . . yelling and cussing in front of these small children." *Id*. at 7. Miller did not stop yelling. Officer Bulfer then searched Miller's car, but found no contraband or weapons. Miller was frustrated because Officer Bulfer would not tell him why he was being arrested.

The State charged Miller with disorderly conduct as a Class B misdemeanor. A bench trial was held, and after evidence was heard, the trial court found Miller guilty as charged. He was sentenced to 180 days with 174 days suspended and credit for 6 days of time served. Miller now appeals.

## DISCUSSION AND DECISION

Our standard of review for sufficiency claims is well-settled. When we review a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. *Parahams v. State*, 908 N.E.2d 689, 691 (Ind. Ct. App. 2009) (citing *Jones v. State*, 783 N.E.2d 1132, 1139 (Ind. 2003)). We look only to the probative evidence supporting the judgment and the reasonable inferences therein to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. *Id*. If there is substantial evidence of probative value to support the conviction, it will not be set aside. *Id*. It is the function of the trier of fact to resolve conflicts of testimony and to determine the weight of the evidence and the

3

credibility of the witnesses. *Yowler v. State*, 894 N.E.2d 1000, 1002 (Ind. Ct. App. 2008).

Miller argues that the evidence was insufficient to support his conviction for disorderly conduct. In order to convict Miller of disorderly conduct, the State was required to prove beyond a reasonable doubt that Miller recklessly, knowingly, or intentionally made unreasonable noise and continued to do so after being asked to stop. Ind. Code § 35-45-1-3(a)(2). Miller contends that the State failed to meet its burden. Specifically, he asserts that he was engaged in protected political speech at the time of his arrest, and therefore, his speech was protected under Article I, Section 9 of the Indiana Constitution.

A two-step inquiry is applied when we review the constitutionality of an application of the disorderly conduct statute. *Johnson v. State*, 747 N.E.2d 623, 629 (Ind. Ct. App. 2001). First, we must determine whether state action has restricted a claimant's expressive activity. *Id.* (citing *Shoultz v. State,* 735 N.E.2d 818, 825 (Ind. Ct. App. 2000), *trans. denied* (citing *Whittington v. State,* 669 N.E.2d 1363, 1367 (Ind. 1996))). Second, if it has, we must decide whether the restricted activity constituted an "abuse" of the right to speak. *Id.* The first prong of the inquiry may be satisfied by a person's conviction for making unreasonable noise based solely on his loud speaking during a police investigation. *Id.* Here, Miller was arrested for loudly yelling and swearing at Officer Bulfer after being handcuffed during the traffic stop. We conclude, and the State concedes, that the evidence showed that the State restricted Miller's expressive activity.

4

Under the second prong, when reviewing the State's determination that expression was an "abuse" of the free speech right under the Indiana Constitution, we are typically only required to find that the determination was rational. *Id*. at 630. Expressive activity is political, for purposes of Article I, Section 9 of the Indiana Constitution, if its point is to comment on government action, including criticism of the conduct of an official acting under color of law. *Blackman v. State*, 868 N.E.2d 579, 585 (Ind. Ct. App. 2007), *trans. denied*. However, "where an individual's expression focuses on the conduct of a private party—including the speaker himself or herself—it is not political." *Id.* We judge the nature of expression by an objective standard, and the burden is on the claimant to demonstrate that his or her expression would have been understood as political. *Id.* If the expression is ambiguous, we must conclude the speech was non-political and review the constitutionality of a disorderly conduct conviction under standard rationality review. *Id.*

In the present case, Officer Bulfer testified that, Miller "kept on" yelling and swearing at the officer and asking Officer Bulfer "why was [he] doing this." *Tr.* at 7. Miller testified that he repeatedly asked Officer Bulfer why he was being pulled over, and after Officer Bulfer handcuffed him, he asked why he was being arrested. *Id*. at 16, 17. The trial court's findings indicated that Miller's speech focused on criticizing Officer Bulfer's actions. *Id*. at 21-22. We, therefore, conclude that the focus of Miller's expressive activity was to criticize the actions of Officer Bulfer in pulling him over, handcuffing him, and arresting him, and it was, thus, political speech.

In establishing that the State did not materially burden the defendant's opportunity to engage in political expression, the State can do so by producing evidence that the

expression inflicted particularized harm analogous to tortious injury on readily identifiable private interests. *Dallaly v. State*, 916 N.E.2d 945, 953 (Ind. Ct. App. 2009) (citing *Blackman*, 868 N.E.2d at 585). When the expressions of one person cause harm to another in a way consistent with common law tort, an abuse under Article I, Section 9 has occurred. *Id.* (citing *Madden v. State,* 786 N.E.2d 1152, 1157 (Ind. Ct. App. 2003), *trans. denied).* "In order to demonstrate such particularized harm, the State must show that the expression caused actual discomfort to persons of ordinary sensibilities or that it interfered with an individual's comfortable enjoyment of his privacy. Evidence of mere annoyance or inconvenience is not sufficient." *Blackman,* 868 N.E.2d at 585 (citation omitted).

In two recent cases, our Supreme Court determined that speech that obstructed or interfered with the ability of the police to perform their duties constituted an abuse of the right to free speech under the Indiana Constitution. In *J.D. v. State*, 859 N.E.2d 341 (Ind. 2007), an officer investigating a complaint against a juvenile in a residential facility approached her to find a peaceable solution to the problem, with an arrest as "the last resort." *Id.* at 343. The juvenile loudly interrupted the officer's attempts to speak to her and did not respond to requests to "stop hollering." *Id.* After she was threatened with arrest, she continued to speak over the officer and was arrested. *Id.* The juvenile challenged the sufficiency of the evidence supporting the trial court's adjudication of delinquency for commission of disorderly conduct, arguing that her conduct was protected political speech. *Id.* at 343-44. The Supreme Court distinguished the facts of *J.D.* with that of *Price v. State*, 622 N.E.2d 954 (Ind. 1993), where the defendant loudly

6

objected to the arrest of another person and officers' threats to arrest her for her protest. *Id.* at 344. The Court found that in *Price,* "the defendant's speech did not obstruct or interfere with the police," whereas the juvenile's alleged political speech in *J.D.* hampered the officer's ability to perform his law enforcement duties. *Id.*

In *Barnes v.* State, 946 N.E.2d 572 (Ind. 2011), *adhered to on reh'g*, 953 N.E.2d 473 (Ind. 2011), police were investigating a domestic violence situation when the defendant yelled loudly at one of the officers, which prompted a warning to stop or face arrest for disorderly conduct; the defendant then retorted, "if you lock me up for [d]isorderly [c]onduct, you're going to be sitting right next to me in a jail cell." 946 N.E.2d at 574. The defendant challenged his eventual conviction for disorderly conduct by arguing that his speech, consisting of yelling at and threatening the officers, constituted protected speech. *Id.* at 578. Relying on *J.D.*, our Supreme Court found that the defendant's speech was that of a person of interest refusing to cooperate with a police investigation and was not within the contours of political speech contemplated by *Price.* *Id.*

We find the present case to be distinguishable from the above cases. In *J.D.*, the juvenile's loud interruptions of the officer's attempts to speak with her and continued speaking over the officer, interfered with the officer's stated purpose of finding a peaceable solution through a conversation with the juvenile without making an arrest. 859 N.E.2d at 344. In *Barnes*, the defendant's speech, consisting of yelling loudly at and threatening the officers, was not even determined to be political speech because it was determined to be merely a person of interest refusing to cooperate with a police

7

investigation and not focused on criticizing the officers' actions. 946 N.E.2d at 578. Here, unlike in *Barnes*, we have already determined that Miller's speech constituted political speech as the focus of his expressive activity was to criticize the actions of Officer Bulfer in pulling him over, handcuffing him, and arresting him and was thus political speech. Additionally, unlike in *J.D.*, where the speech at issue clearly interfered with the officer's attempt to have a conversation with the juvenile, here, the State failed to present any evidence that Miller's speech, although loud and profane, interfered with Officer Bulfer conducting his duties. Nothing in Miller's speech prevented the officer from issuing a traffic citation to Miller for changing lanes without signaling properly. He was clearly able to conduct his duties in that he was able to complete a full search of Miller's car for officer safety and found no contraband or weapons. We conclude that Miller's speech was protected political speech and did not constitute an abuse of the right to free speech under the Indiana Constitution. We, therefore, reverse Miller's conviction for disorderly conduct.

Reversed.

MATHIAS, J., and CRONE, J., concur.